207 F.3d 1373 (Fed. Cir. 2000)
 G0LLEHON FARMING, GOLLEHON GRAIN CO., GREG P. ALZHEIMER, JIM ANDERSON, LARRY F. ARENDT, ARMSTRONG FARMS, BAR TRIANGLE J RANCH, B.M. (BUD) BEASTROM, JAMES BEASTROM, CECIL BENJAMIN, DELLAS BENTZ, CARTER BERG, ET AL, DENNIS BERTSCH, HERMAN BERTSCH, ROGER BERTSCH, MYRNA BERTSCH, RANDY BERTSCH, PIUS BLACK, ARLO BODIN, SIDNEY BOE, ALBERT L. BOECKEL, GAYLEN E. BRANDT, GILBERT BRAUN, ERVIN BREN, BUDAK FARMS, BART BURDICK, JERRY BUXBAUM, DONNA BUXBAUM, CA WEEDING & SONS, LLOYD L. CALKINS, DON CANHAM, CHAPIN FARM ACCOUNT, CHARLES SENNER, INC., CHRISTINE CHRISTIANSEN, HELEN CHRISTIANSEN, CARLYLE H. COLBY, COTTONWOOD FARMS, INC., D&H MURPHY, INC.,MARVIN O. DAHL, GERDA M. DAHL, DALLAS MERCHANT & SONS, INC., DAVE JONES FARMS, INC., DEKKER, INC., TOM DEKREY, BENNIE DEWALD, CRAIG DEWALD, DIAMOND RING FARMS, DIAMOND V CORPORATION, DJR, INC., CLIFTON DOCKTER, DON SIMONSON RANCH, INC., DONALD L. HAFLA, DOWNS INC., EARL GREEN, INC., MYRON EBERTS, GARY EDIGER, EISSINGER LAND & CATTLE CO., JEFF ELLINGSON, PETER C. ELLIS, EUGE
NE ENGEN, RAY ERBELE, TIM ERBELE, ERWIN GACKLE, INC., JAY ESTVOLD, F. MONTE LASSONDE FARMS, GERRY L. FARVER, DALE FELLON, WAYNE F. FISHER, TIM FIX, ANNE FIX, FLATEN RANCH, INC., GAYLEN FLEMING, FRED R. LASSONDE FARMS, ARLEE FRIED, KENT J. FRITZ, LAVONNE FRITZ, GARY GEISINGER, JIM GENTRY & DION ESTATES, GENTRY LAND & LIVESTOCK, INC., GERALD HUBER COMPANY, GERHARD RAU ESTATE, GOLDEN GRAIN FARMS, INC., GOLDEN PRAIRIES, INC., GRAND VALLEY FARMS, INC., GREEN RIDGE FARM, GULDBORG BROS., INC., H.R. BEIBER & SONS, INC., TIM HAFLA, LINUS HAGER, HAGLUND RANCH, INC., HALL FARMS, WALTER L. HAMMERMEISTER, MIKE HARDES, SHELDON HAROLDSON, GENE HARTMAN, JAMES L. HARVEY, HARVEY FARMS, CURTIS HASE, MOHAMMED HATTUM, RAY HAUCK, BRADLY WAYNE HAUFF, BRIAN LEE HAUFF, CURTIS WAYNE HAUFF, DENNIS HAUFF, ROSELLA HAUFF, DAN HAYNIE, VERNON C. HEER, ROY HEINTZMAN, LUELLA HENDRICKS, ET AL, PEGGY HENDRICKS, ET AL, RODNEY HENDRICKS, LOUIE HENDRICKS, RANDY HENKE, G.G. ENNE, HESS RANCH, INC., ELMER J. HEUPEL, ROGER D. HILL, TOM A. HILL, ST
ANLEY HILLERUD, LOUIS HITZ, LLEWELLYN HOFFNER, ARLENE HOFFNER, TOM HOLZER, HOUG BROS. JV, HOUG FARMS, INC., STEPHEN HOVERSLAND, GERALD HUBER, ALYCE HUBER, HUBING RANCH, INC., HERMAN HULM, STEVE HULM, FLOYD R. HURT, DARCY IRION, ALBERT ISAAK, ROBERT ISAAK, ET AL, RONALD ISAAK, JADEL CORNER FARMS, TERRY D. JEWELL, TERRY L. JORDAN, K.G. FARMS, INC., KACZMAREK FARMS, LEO KAHM, MARCO KAHM, LARRY KAIBEL, HARVEY KARGE, G.M. KARY, AL KEEBLER, ROBERT ZIMMERMAN, CHARLES KEIM, IVAN KELLER, CURTIS D. KENNER, KIM KENNER, DAVID KENNER, DEAN KENNER, MARLA KENNER, HAROLD KENNER, H. VERNON KESSLER, DAVID KESSLER, KH, INC., V. FLOYD KINDLE, SHARON KINDLE, EUGENE KINZEL, JOHN KINZEL, GABE KINZEL, JERRY
KITTELSON, ARNOLD KJELGAARD, BRENT KLEINSASSER, LELAND KLEINSASSER, HARLAN KLING, DONALD KONZAK, JESS KOUBA, KAREN KOUBA, MORGAN KOUBA, WILLIAM J. KRAFT, TONY KRANCE, HARRY H. KRAUSE, BRENDA KRAUSE, DAVID KROGEDAL, MERLE KROGEDAL, CLARION KUBAS, DAVID L. KUBAS, DAVID V. KUBAS, DEL KUBAS, WAYNE KUBAS, MARLA KUBAS, KUBESH, INC., BYRON KUBICK, RANDY KUDRNA, KUDRNA & WITTE, INC., CASEY KUKLA, JOHN KUSLER, L.H. GIBBS, WESTERN EXCHANGE, JAMES J. LAEGER, ALICE M. LAEGER, ARLYN LAND, CHRIST LANG, GARY LANG, JEFF LARSON, MARK LARSON, GEORGE LATURNUS, LAZY J FIVE RANCH, LEWIS & JOYCE ROONEY RANCH, WILLIAM A. LEYS,THOMAS J. LILL, LINDBERG GRAIN, INC., LINDBERG RANCH, INC.,LNL PARTNERSHIP, JOE LOH, TIM LOH, LOST HORSESHOE FARM, LOUDON CORPORATION, ROGER LUDWICK, CLARENCE C. LUFT, LYDERS, INC., M&M FARMS, M&G FARMS, CHARLES G. MAIER, GREG MAIER,MARK R. LASSONDE FARMS, MILTON T. MARKUSON, DUANE MARSH,LARRY MARTIN, DAVID MATEJOVSKY, NORMA MATEJOVSKY, DENNIS D.MAYER, BRENDA MAYER, JAMES L. MCCABE, REBECCA MCCABE, DONALD K. MCCANN, JOHN MCCARTER, EARL MCKEEVER, HARLAN P. MEHLING, BERNICE MEIDINGER, SIDNEY L. MEIDINGER, MICHAEL MORRISON FARMS, INC., WILLARD J. MICHELS, MIKE & PATTY OGAN FARM, JAMES MIKKELSEN, BERT MIKKELSEN, HOPE MIKKELSEN, LAVERNE C. MIKKELSEN, MILLER FAMILY FARM, STEVEN MINER, ED MORLOCK, MORTENSON BROTHERS, MULLENDORE FARMS, JERRY L. MUTH, HERBERT NATHAN, CARL NELSON, ET AL, DENNIS NELSON, ET AL, DONALD A.NELSON, JON O. NELSON, NELSON FARMS, INC., SCOTT NEUBAUER,LAURENE NEUBAUER, MIKE NEUBAUER, ROBERT NEWTON, KELLY NITZ, WILLIAM H. NITZ, RANDOLPH NODLAND, LUTHER NODLAND, NORTH RIDGE FARMS, INC., O.M. SKARI & SONS, INC., OLIGMUELLER FARMS, DOUG OLSCHLAGER, CURTIS J. OLSON, GILBERT OST,CHARLES OSTER, RUEBEN OSTER, SHELDON OSTER, LARRY E. PAVLICEK, HAROLD PEABODY, LYLE PETERSON, FRANK PEYERL, SHIRLEY PEYERL, GORDON PIETERICK, PINE BUTTE RANCH, PLEASANT VALLEY FARM, INC., STANLEY J. POLLESTAD, PRAIRIE ELK RANCH, INC., WALTER H. PRESLER, ADELINE PRESLER, TONY RAMBOUSIK, OTTO RASZLER, KENNETH RAUSER, MARGIE REINBOLD, GARY L. REINKE, KENNY REIS, NICOLE REIS, JENA REIS, GLENN RENNER, DELMA RENNER, REX AND LEANN HASKINS JOINT VENTURE, RINDY BROTHERS, RALPH RIVINIUS, RON RIVINIUS, DAN RIVINIUS, HENRY RIVINIUS, ROBERT ROACH, WALTER ROBERTSON, MARGARET ROBERTSON, ROCKING JT RANCH, INC., ROCKY RIDGE RANCH, INC., ANN ROPPEL, MICHAEL ROPPEL, DEBBIE ROPPEL, TERRY ROPPEL, RORVI0 FARMS, DARREL ROY, KATHERINE ROY, ROY FAMILY FARMS, ROMAIN A. RYDER, YVONNE RYDER, S&L FARMS, INC., RONALD L. SAFTY, JAY M. SANDSTROM, MARK SANDSTROM, ALLEN SCHILLER, VERLYN RAY SCHIMKE, MORRIS SCHLECHT, GARY D. SCHMIDT, MURRIEL SCHMIDT, SCHMIDT HEREFORDS, INC., LAUREN SCHMIESS, RANDALL SCHNASE, ANN KALMBACH, LINDA SCHOTT, NEIL SCHOTT, SCHURRS, KENNETH B. SEEHAFER, GRANT SETTINGSGARD, DONALD SHOAL, ART SICKLER, ROSE SICKLER, SIKORSKI & SONS, SIMONSON RANCH, INC., EDWARD SOLBERG, DON SONDROL, KENNETH K. SONDROL, ROBERT SONDROL, SCOTT J. SONDROL, NELS SORENSEN, JOHN STEFFEN, CLARENCE STEFFEN, GEORGE L. STENSLAND, JOANN C. STENSLAND, STENSLAND RANCH, INC., BERT STEPPLER, GENE STOESER, RODNEY STOESER, RANDALL STOTZ, JANICE STOTZ, HARLOW STRANDLUND, RANDY STRIEFEL, RICK STROM, ROBERT SWENSON, ROD SWENSON, T KUBESH FARMS, INC., THE PORTER FARM, TJON FARMS, TOM ELLIS FARMS, INC., TOM'S TARENTAISE RANCH, INC., TRAEHOLT FARMS, TRANG FARMS, INC., TRIPLE
H FARMS, ALVIN E. TSCHETTER, CALVIN TSCHETTER, CHESTER TSCHETTER, U-HEART GRAIN FARM, JOHN URTON, NORMAN R. VINE, BRUCE VOEGELE, MELISSA VOEGELE, DANIEL VOLK, ROBERT D. VOLK, W-G SENNER, INC., MIKE WAGNER, KARL A. WAITSCHIES, WILLARD WALLMAN, ROBERT C. WEEK, WHITETAIL GRAIN COMPANY, RON WIESELER, EUGENE WIRTZ, ELDON WOLD, LARRY N. WOLF, JOHNNY WOLF, VICTOR
WOLF, MARY ELAINE WOLF, GEORGE WOOD, RUBY WOOD, CAROL WOOD, WOOD FAMILY JOINT VENTURE, WOOKEY BROS., YF CORP., YALE FARMERS COOPERATIVE, YOUNG BROTHERS FARM, ZIEGLER BROS., ROBERT ZIMMERMAN, WILLIAM ZIMMERMAN, ZUTHER FARMS, INC., JONNIE ZVONEK and WILMER ZVONEK, Plaintiffs-Appellants,
v.
UNITED STATES, Defendant-Appellee.
 99-1330
 United States Court of Appeals for the Federal Circuit
 Deicded: March 27, 2000
 
 Appealed from: United States District Court for the District of Montana
 Senior Judge Paul G. Hatfield [Copyrighted Material Omitted]
 Robert G. Mullendore, of Missoula, Montana, argued for plaintiffs-appellants. Of counsel on the brief was Alan F. Blakley, Blakley & Velk, of Missoula, Montana.
 Peter Jeremy Smith, Attorney, Appellate Staff, Civil Division, Department of Justice, of Washington, DC, argued for defendant-appellee. With him on the brief were David W. Ogden, Acting Assistant Attorney General, and Mark Bernard Stern, Attorney. Of counsel was Robert E. Kirschman, Jr., Attorney.
 Before NEWMAN, CLEVENGER, and GAJARSA, Circuit Judges.
 CLEVENGER, Circuit Judge.
 
 
 1
 Plaintiffs-appellants Gollehon Farming and 347 other farmers and grain elevator companies (hereinafter "Gollehon Farming") appeal the decision of the United States District Court for the District of Montana dismissing their monetary, declaratory, and class action claims against the United States based on alleged mismeasurement of the protein content of wheat inspected by the Federal Grain Inspection Service in 1993 and 1994. See Gollehon Farming v. United States, 17 F. Supp. 2d 1145, 1162 (D. Mont. 1998). Because the district court correctly dismissed the claims, we affirm.
 
 
 2
 * This case is about the measurement of wheat protein content. The Federal Grain Inspection Service ("FGIS"), an agency of the United States Department of Agriculture, is charged with evaluating the quality and condition of domestic agricultural grains, such as wheat. See 7 U.S.C. § 74(a) (1994). Among the properties measured by the FGIS is protein content, which is a significant factor in determining the price of wheat, with higher protein levels commanding greater market prices.
 
 
 3
 The FGIS is not the only measurer of protein content; given the importance of protein content in establishing price, grain elevators operated by private parties also conduct such measurements when purchasing wheat from farmers. When wheat is shipped from elevators in connection with a sale, the FGIS conducts official measurements, including protein content--which, in turn, factors into the price that the elevators receive for the wheat. Therefore, the elevators have strong incentives to ensure that their measurements accord with those of the FGIS so that they can reliably predict the price at which they will be able to sell wheat purchased from a farmer. However, neither the FGIS nor any other part of the United States Government mandates protein content measurements by the elevators or specifies the accuracy of such measurements.
 
 
 4
 In mid-1992, the FGIS upgraded its protein content measurement equipment. Essentially, near-infrared transmittance technology ("NIRT") replaced near-infrared reflectance technology ("NIRR"). The FGIS believed that NIRT was likely to avoid admitted shortcomings of the NIRR systems and would ultimately generate more accurate and predictable results. All, however, did not proceed as planned. The FGIS suspended the use of NIRT instruments in late 1992, due to a calibration problem. The FGIS reintroduced NIRT instruments in early 1993, but they required two more recalibrations by January 1994. Until the January 1994 recalibration, the parties agree that the NIRT instruments underrepresented the protein content of some types of wheat.
 
 
 5
 The grain elevators responded to this persistent mismeasurement by adjusting the bias on their instruments--most grain elevators were still using NIRR equipment at that time--downward. Thus, the farmers allegedly received less money from the grain elevators for their wheat than would have been the case if the FGIS had continued using the NIRR instruments or had calibrated the NIRT instruments to more closely replicate NIRR results. Likewise, the grain elevators allegedly received less money for wheat that they had purchased from farmers before they biased their NIRR instruments downward.
 
 
 6
 Believing the FGIS to be the culprit in this protein content measurement mischief, the farmers and grain elevators together filed this suit in the District Court for the District of Montana, alleging that negligence and mismanagement by the government in the rollout of the NIRT instruments caused the damages they incurred. Specifically, both the farmers and grain elevators brought claims based on the Little Tucker Act, 28 U.S.C. § 1346(a)(2) (1994), in conjunction with the Grain Standards Act, 7 U.S.C. § 71 et seq. (1994), and the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671-2680 (1994). They also sought class certification on behalf of all wheat producers and grain elevators in the United States that sold wheat during the 1993-94 time period, where the protein content was mismeasured "as a result of the use of NIRT technology."
 
 
 7
 The district court dismissed virtually all the claims. See Gollehon Farming, 17 F. Supp. 2d at 1162. The remaining claims were dismissed by stipulation of the parties. See Gollehon Farming v. United States, No. CV9633GFPGH, slip op. at 1 (D. Mont. Jan. 20, 1998) (Judgment).
 
 II
 
 8
 We first address the question of our own jurisdiction. See, e.g., Bender v. Williamsport Area Sch. Dist., 475 U.S. 534, 541 (1986) ("[E]very federal appellate court has a special obligation to satisfy itself not only of its own jurisdiction, but also that of the lower courts in a cause under review, even though the parties are prepared to concede it" (quotations and citations omitted).). The appeal comes to us from a United States District Court, and includes, inter alia, claims based on the Little Tucker Act and the FTCA. See Gollehon Farming, 17 F. Supp. 2d at 1149. While we do not ordinarily have appellate jurisdiction over FTCA claims, see 28 U.S.C. § 1295(a)(2), "a mixed case, presenting both a nontax Little Tucker Act claim and an FTCA claim, may be appealed only to the Federal Circuit." United States v. Hohri, 482 U.S. 64, 75-76 (1987). Thus, if the district court had jurisdiction over this case based in any part upon the Little Tucker Act, we retain exclusive appellate jurisdiction over all the claims present in the case.
 
 
 9
 As we discuss more fully below, the district court here concluded that Gollehon Farming did not identify a "money-mandating" provision of applicable statutes.See Gollehon Farming, 17 F. Supp. 2d at 1158. Although the district court appears to have thought that the lack of such a provision was a jurisdictional flaw, see id., our case law makes clear that the appropriate disposition is a dismissal for failure to state a claim. See, e.g., Palmer v. United States, 168 F.3d 1310, 1312-14 (Fed. Cir. 1999) (lack of money-mandating statute is not jurisdictional issue); Dehne v. United States, 970 F.2d 890, 893 (Fed. Cir. 1992) (while the Tucker Act provides jurisdiction, a money-mandating provision provides the substantive right to relief); Banks v. Garrett, 901 F.2d 1084, 1087-88 (Fed. Cir. 1990) (retaining jurisdiction over Privacy Act and First Amendment claims even when lack of money-mandating provision required dismissal of the Little Tucker Act claims); Hohri v. United States, 847 F.2d 779 (Fed. Cir. 1988) (on remand) (affirming FTCA claims even where Little Tucker Act claims were properly dismissed). Thus, the district court had jurisdiction in part under the Little Tucker Act; pursuant to the Supreme Court in Hohri, the Federal Circuit is the exclusive forum for Gollehon Farming's appeal. Indeed, this case is nearly identical to Banks v. Garrett, where this court specifically held that a nonfrivolous claim for relief under the Little Tucker Act was sufficient to vest this court with appellate jurisdiction over remaining claims. See 901 F.2d at 1087-88. Here, neither the district court nor the government suggests that the Little Tucker Act claim is so farfetched as to be frivolous. We therefore conclude that we have exclusive jurisdiction over all the claims at issue.
 
 III
 
 10
 We next turn to the claims based on the Little Tucker Act, 28 U.S.C. § 1346(a)(2) (1994). In relevant part, the Little Tucker Act allows "[a]ny civil action or claim against the United States, not exceeding $10,000 in amount, founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department . . . ." Id. In order to state a proper claim for recovery under the Little Tucker Act, the plaintiff must identify a provision of law that can be fairly interpreted as mandating compensation from the United States. See United States v. Mitchell, 463 U.S. 206, 216-17 (1983). The failure to identify a "money mandating" provision results in such claims being dismissed for failure to state a claim upon which relief can be granted. See, e.g., Palmer, 168 F.3d at 1312-14; Dehne, 970 F.2d at 893. We review such dismissals de novo. See Dehne, 970 F.2d at 892.
 
 
 11
 Gollehon Farming pitches its argument on the Grain Standards Act, 7 U.S.C. §§ 71-87 (1994), as mandating compensation for violations they allege have occurred in this case. Gollehon Farming argues that the overall policy behind the Grain Standards Act is to promote the general welfare by establishing, inter alia, a reliable and accurate grain inspection system. It suggests that the FGIS has violated these aspects of the Grain Standards Act by mismeasuring the protein content, and that the overall regulatory scheme has placed the Department of Agriculture in a fiduciary relationship with the claimants, thus mandating compensation for the violations. Gollehon Farming points to Mitchell, where the Court found that the "comprehensive" regulations relating to Native American timber harvesting placed "full responsibility" for Native American timberlands into the hands of the United States, thus creating a fiduciary relationship that mandated compensation. 463 U.S. at 216; see also id. at 226 ("Because the statutes and regulations at issue in this case clearly establish fiduciary obligations of the government in the management and operation of [Native American] lands and resources, they can fairly be interpreted as mandating compensation by the Federal Government for damages sustained.").
 
 
 12
 We think the analogy to Mitchell is inapposite here. In Mitchell, the Court based its conclusion that a fiduciary relationship existed on the grounds that the statutory regime granted the Department of the Interior "comprehensive" control over the sale of timber from Native lands, and required that such sales "be based upon a consideration of the needs and best interests of the [Native American] owner and his heirs." 463 U.S. at 209. In contrast, the Grain Standards Act, while clearly based on broad policy goals, see 7 U.S.C. § 74(a) (describing the intent of Congress to promote and protect "the general welfare of the People of the United States" by providing "official United States standards for grain"), does not establish government control over the wheat production and distribution chain. To be sure, the Department of Agriculture, by establishing and enforcing uniform standards for grain, is an important component of the nation's grain production and distribution system. But this cannot imply that the United States has, via the Grain Standards Act, assumed the responsibility to ensure that farmers and grain elevators generate a minimum return on investment. Cf. Mitchell, 463 U.S. at 221-22 ("The regulatory scheme was designed to assure that the [Native Americans] receive the benefit of whatever profit the forest is capable of yielding" (internal quotations and brackets omitted).). The Grain Standards Act cannot be fairly read to mandate compensation. We thus agree with the district court's dismissal of the Little Tucker Act claims.
 
 IV
 
 13
 The district court dismissed the claims based on the FTCA on the grounds that it lacked subject matter jurisdiction over these claims. See Gollehon Farming, 17 F. Supp. 2d at 1151. We review jurisdictional issues de novo. See GAF Bldg. Mats. v. Elk Corp., 90 F.3d 479, 481 (Fed. Cir. 1996). Because the FTCA is a law not unique to this court's jurisdiction, we defer to the law of the regional circuit--in this case the Ninth Circuit--from which the case arises. See Biodex Corp. v. Loredan Biomedical, Inc., 946 F.2d 850, 855-56 (Fed. Cir. 1991).
 
 
 14
 The FTCA provides that the United States may be held liable in tort when a federal employee is negligent in the scope of his or her employment "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b) (1994). This general waiver of sovereign immunity, however, is subject to important limitations, two of which resolve the FTCA claims at issue here.
 
 
 15
 * First is the "misrepresentation exception," which prohibits claims against the United States "arising out of . . . misrepresentation." 28 U.S.C. § 2680(h) (1994). An action based on misrepresentation is characterized by the transmission of allegedly false or incorrect information by the government as an element in the proffered theory of causation. See Block v. Neal, 460 U.S. 289, 296 (1983). That is, if the plaintiff's causal chain depends upon the transmission of misinformation by the government, then the exception applies and there is no waiver of sovereign immunity under the FTCA. See, e.g., Leaf v. United States, 661 F.2d 740, 742 (9th Cir. 1981).
 
 
 16
 As the district court noted, the FTCA claims by the farmers[1] in this case have a theory of causation based on government misrepresentations. The farmers do not suggest that the FGIS mismeasured their wheat. Indeed, they cannot, as the FGIS measurements were taken when the wheat was possessed by the grain elevators. The farmers, however, argue that the FGIS mismeasurements caused them to receive less money for their wheat, because the grain elevators (who did measure the farmers' wheat) responded to FGIS mismeasurements by adjusting the bias of their instruments downward. But the farmers do not suggest that the grain elevators' actions were mandated by the FGIS; instead, their theory is based on the misinformation that the FGIS measurements communicated to the grain elevators. That is, because the grain elevators received information (from prior measurements with NIRT systems) that the NIRT systems were likely to underrepresent the protein content, they voluntarily adjusted their instruments accordingly, thereby underrepresenting the farmers' protein content. Because the recipient of the alleged misinformation is irrelevant to the applicability of the exception, see Alexander v. United States, 787 F.2d 1349, 1350-51 (9th Cir. 1986) (FTCA claim barred when third party relied on misinformation to detriment of plaintiffs), we agree with the district court that the farmers' FTCA claims are based on misinformation and were correctly dismissed.
 
 
 17
 The FTCA claims of the grain elevators, however, are based on a different causation theory--that the FGIS directly mismeasured their wheat--and are not barred by the misrepresentation exception. The FTCA, however, presents another hurdle that the grain elevators must clear to mount their claims.
 
 B
 
 18
 The statutory "discretionary function exception" withholds jurisdiction over any claims "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved is abused." 28 U.S.C. § 2680(a) (1994). According to the Supreme Court, the discretionary function applies when the challenged conduct involves (1) whether an element of choice or judgment is placed in the hands of the acting employee, and (2) whether the nature of the choice is "susceptible to policy analysis." United States v. Gaubert, 499 U.S. 315, 325 (1991). See also Berkovitz v. United States, 486 U.S. 531, 536-37 (1988). In its most recent treatment of the issue in Gaubert, the Supreme Court held that the discretionary function exception applies broadly, noting that "policy analysis" can take many forms, and that the government's protection from tort liability extends as long as the governmental actions were grounded in the "social, economic, or political goals of the statute and regulations." 499 U.S. at 323. In particular, Gaubert noted that actions taken in furtherance of a regulatory program "were likewise protected, even if the particular actions were negligent." Id. In contrast, the Court noted that where employees failed to follow specific directions contained in applicable statutes or regulations--that is, where there was no room for choice--the government may be held liable. See id. at 324 (citing Berkovitz, 486 U.S. at 536). Likewise, negligent actions by employees that were unrelated to policy choices, such as the negligent operation of motor vehicles, fell outside of the exception. See id. at 325 n.7 ("Although driving requires the constant exercise of discretion, the official's decisions in exercising that discretion can hardly be said to be grounded in regulatory policy."). Our task is to determine on what side of the line the allegations in this case fall.
 
 
 19
 The grain elevators make three allegations that they suggest fall outside of the discretionary function exception: (1) that the timing of the rollout of NIRT equipment (prior, they allege, to proper testing and calibration) was negligent; (2) that the selection of the wheat samples used in the initial calibrations was negligent; and (3) that the training of NIRT operators was negligent. They do not suggest, however, that the choices made by the FGIS were constrained by directly applicable statutes or regulations. Cf. Berkovitz, 486 U.S. at 536 (exception does not apply to activities in contravention of applicable law). Thus, we must decide whether these discretionary actions involve the sort of choices Congress intended to protect from suit. See Gaubert, 499 U.S. at 322.
 
 
 20
 The FGIS argues that each of the challenged actions was directly related to the policy goal of providing reliable and accurate measurements. They note that the selection of wheat samples was driven by the timing of the NIRT rollout--in order to calibrate the instruments, the FGIS had to use wheat samples collected at the time the calibration equation was developed, which was necessarily before the introduction of the NIRT systems. Thus, the challenge to the selection of wheat samples is really the same as the attack on the timing of the NIRT rollout. And we have little difficulty in concluding that the timing of the NIRT rollout was closely related to the FGIS policy goals--to provide better and more reliable measurements of wheat protein content. The FGIS made a discretionary policy decision that the benefits of the NIRT system would outweigh the potential problems with an early introduction. This is precisely the type of decision that is intended to fall within the discretionary function exception. See United States v. Varig Airlines, 467 U.S. 797, 815 (1984) (applying exception to decisions related to the implementation of a "spot-check" safety inspection program). Likewise, allegations based on the training of NIRT operators also fall well within the discretionary function exception. Choices relating to the quantity and nature of training clearly implicate consideration of the underlying policy goals of the measurement program, not to mention the fiscal concerns of the agency involved. Again, the discretionary function exception applies.
 
 
 21
 Therefore we conclude that the district court properly dismissed the grain elevators' FTCA claims.
 
 V
 
 22
 Gollehon Farming finally argues that the district court erred in denying class certification for similarly-situated farmers and grain elevators. This proposed class action would be based on the FTCA claims we discussed above. However, because we concluded above that none of the FTCA claims on appeal were properly before the district court, the class certification arguments are now moot, and we decline to address them.[2]
 
 VI
 
 23
 Gollehon Farming's Little Tucker Act claims fail because they have not identified an appropriate money-mandating provision of law. The FTCA claims also fail, as they all fall within congressionally-established limitations on the government's waiver of sovereign immunity for tort actions by private parties. And the failure of the FTCA claims renders moot the proposed class certification by Gollehon Farming. Accordingly, we conclude that the district court properly dismissed the claims at issue, and therefore affirm.
 
 COSTS
 
 24
 No costs.
 
 AFFIRMED
 
 
 NOTES:
 
 
 [1]
 This case involves both farmers and grain elevators. For convenience, we generally refer to the two groups together. On this issue, however, the distinction matters, so we refer to each individually.
 
 
 [2]
 The district court addressed the class certification question only with respect to certain FTCA claims by the grain elevators. See Gollehon Farming, 17 F. Supp. 2d at 1159 n.27 ("[T]he court will focus on the propriety of certifying as a class action the FTCA claims of the plaintiff-grain elevators."). Those claims are not on appeal. See id. at 1159 (declining to dismiss or grant summary judgment for or against these claims). It appears that they were dismissed by stipulation of the parties. See Gollehon Farming, No. CV9633GFPGH, slip op. at 1 (D. Mont. Jan. 20, 1999) (Judgment).