O’Malley, Circuit Judge, dissenting. I agree with the majority that a statute is money-mandating for the purposes of Tucker Act jurisdiction if it “can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained.” United States v. White Mountain Apache Tribe, 537 U.S. 465, 472, 123 S.Ct. 1126, 155 L.Ed.2d 40 (2003) (quoting United States v. Mitchell, 463 U.S. 206, 216-17, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983)). I disagree, however, with the majority’s application of this standard. I believe that the en banc portion of our decision in Fisher v. United States, 402 F.3d 1167, 1171-73 (Fed. Cir. 2005) (en banc in relevant part), compels a more searching analysis than the majority conducts. Under the correct analytical approach, I would find that 26 U.S.C. § 3102(b) must be interpreted as an immunity provision, not a reimbursement provision, and that § 3102(b) is not money-mandating. I therefore respectfully dissent from today’s judgment. I. The threshold question in this case is how we are to determine whether a statute is money-mandating. The governing test originates in United States v. Testan, 424 U.S. 392, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976). The Supreme Court held in Testan that a federal statute is money-mandating only if it “can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained.” Id. at 400, 96 S.Ct. 948 (quoting Eastport S.S. Corp. v. United States, 372 F.2d 1002, 1009 (Ct. Cl. 1967)). The Court repeated the “fairly be interpreted” language in United States v. Mitchell, 463 U.S. at 216-17, 103 S.Ct. 2961 (quoting Testan, 424 U.S. at 400, 96 S.Ct. 948). The Court explained that “the substantive source of law may grant the claimant a right to recover damages either ‘expressly or by implication.’” Id. at 217 n.16, 103 S.Ct. 2961 (quoting Eastport, 372 F.2d at 1009). The Court returned to this question in White Mountain. In a 5-4 decision, the Court held again that “a statute creates a right capable of grounding a claim within the waiver of sovereign immunity if, but only if, it ‘can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained.’” 537 U.S. at 472, 123 S.Ct. 1126 (quoting Mitchell, 463 U.S. at 217, 103 S.Ct. 2961). The Court elaborated on that holding, however, stating that “[i]t is enough ... that a statute creating a Tucker Act right be reasonably amenable to the reading that it mandates a right of recovery in damages.” Id. at 473, 123 S.Ct. 1126. “While the premise to a Tucker Act claim will not be ‘lightly inferred,’ a fair inference will do.” Id. (quoting Mitchell, 463 U.S. at 218, 103 S.Ct. 2961). Four justices dissented, suggesting that the Court had loosened the relevant test and “engage[d] in a new inquiry, asking whether common-law trust principles permit a ‘fair inference’ that money damages are available, that finds no support in existing law.” Id. at 482, 123 S.Ct. 1126 (Thomas, J., dissenting). They believed that the Court had “fashion[ed] a new test to determine whether Congress has conferred a substantive right enforceable against the United States in a suit for money damages.” Id. at 487, 123 S.Ct. 1126. Two justices who joined the White Mountain majority—and whose votes were necessary to form that majority— issued a separate concurrence, however. The concurrence emphasized that they believed that the majority opinion was “guided by” Mitchell, and did not change the law, despite the language employed. Id. at 479-80, 123 S.Ct. 1126 (Ginsburg, J., concurring). Before White Mountain, our precedent suggested a two-step inquiry where, “for purposes of satisfying the jurisdictional requirement that a money-mandating statute or regulation is before the court, the plaintiff need only make a non-frivolous allegation that the statute or regulation may be interpreted as money-mandating.” Fisher, 402 F.3d at 1172 (citing Gollehon Farming v. United States, 207 F.3d 1373, 1378-80 (Fed. Cir. 2000)). “If, as a second step, the issue of jurisdiction is later pressed and it is subsequently decided that the statute or regulation is not money-mandating, then the case is dismissed for failure to .state a claim upon which relief can be granted.” Id. (citing Gollehon, 207 F.3d at 1379). In Fisher, we overruled this line of cases. Id. at 1172-73. We held instead that: When a complaint is filed alleging a Tucker Act claim based on a Constitutional provision, statute, or regulation, the trial court at the outset shall determine, either in response to a motion by the Government or sua sponte (the court is always responsible for its own jurisdiction), whether -the Constitutional provision, statute, or regulation is one that is money-mandating. ... For purposes of the case before the trial court, the determination that the source is money-mandating shall be determinative both as to the question of the court’s jurisdiction and thereafter as to the question of whether, on the merits, plaintiff has a money-mandating source on which to base his cause of action. Id. at 1173. It is not readily apparent how we are to reconcile the “reasonably amenable” language in White Mountain with our discussion in Fisher, which postdated White Mountain. The majority concludes that White Mountain set forth an apparently permissive test, where, if a statute is “reasonably amenable” to a money-mandating reading, the jurisdictional requirement is satisfied, even if, upon further inquiry, a thorough review of the statutory scheme at issue would lead to a contrary conclusion. 537 U.S. at 473, 123 S.Ct. 1126. In Fisher, however, we held that the same “single test” is the sole determinant of whether a statute is money-mandating. 402 F.3d at 1173. This creates a conundrum. There may be multiple reasonable ways to read a statute, but whether a statute is money-mandating is ultimately a yes-or-no question, presumably governed by the more reasonable and fair reading of the statute. Soon after we issued our opinion in Fisher, the Court of Federal Claims grappled with this problem in Contreras v. United States, 64 Fed.Cl. 583 (2005). The plaintiffs in Contreras argued that White Mountain “established] a new test for determining whether a statute is money-mandating” that “replaces a normal-‘fairly interpreted’ test with a less-demanding test of treasonable amenability’ based on fair inferences.” Id. at 588 (alteration-in original). The court rejected this contention, finding instead'- “that the Supreme Court could not have intended to change the legal test for determining whether a statute is money-mandating.” Id. at 590. Analyzing the language of White Mountain at length, the Contreras court ultimately concluded that “[t]he ■ test for whether a statute is money-mandating has not changed—our Court must still determine whether" the statute, correctly interpreted, would require a money damages remedy.” Id. at 590-92. The Contreras court said: , . To read “fair inference” to mean any-, thing, less than the normal, inference used in interpreting a statute ... would make little- sense, particularly in light of [Fisher’s] elimination of the “two-step process.” The meaning of a statute when this Court determines if a case is within its jurisdiction is the same as its meaning when the Court determines the merits of the case.. How could it be that a, statute would require the government to pay money, damages merely because it arguably can be read to require the government to pay. money damages? To ■be close to something is not the same as being it. Surely, “good enough for government liability” is not the measure of our Court’s jurisdiction. Id. at 592 (citing Fisher, 402 F.3d at 1172-73). ' In short, Contreras held—and the government argues here—that the test is not whether a money-mandating interpretation of a statute is reasonable, but whether it is correct. The government argues that a statute can only be “fairly interpreted” via application of all traditional principles of statutory interpretation, leading to the single, most correct, reading. That is, admittedly, a somewhat strained reading of the Supreme Court’s phrasing in White Mountain; a statute may well be “amenable” to multiple reasonable interpretations. See White Mountain, 537 U.S. at 473, 123 S.Ct. 1126. As the majority does, that follow-on language in White Mountain could be read to require at this stage that we • determine only whether the Hospital’s money-mandating interpretation' of ' the statute is “reasonable]” or “fair[ ],” id. at 472-73, 123 S.Ct. 1126, analogous to the familiar Chevron analysis of whether an agency’s interpretation “is based on a permissible construction of the statute,” Chevron, U.S.A. Inc. v. Nat. Res. Def. Council, 467 U.S. 837, 843, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). But'that approach is not compatible with Fisher. And I do not believe it is compelled by White Mountain. The majority’s conclusion would mean that the Supreme Court did intend to change the law in White Mountain. But, if we are to determine in a single step and for all purposes whether a statute is money-mandating, we have no choice but to decide the most correct interpretation of the purportedly money-mandating statute , in that one step—i.e., the truly “fair” interpretation of it. It cannot be that a statute mandates that the government must pay monetary compensation on a set of claims merely if the statute could be read to permit it. At most, I read Testan, Mitchell, White Mountain, and Fisher to instruct courts to construe statutes liberally in determining whether they are money-mandating.[1] These cases do not stand for the proposition, however, that courts may avoid determining what the most reasonable interpretation of a statute is. We therefore must decide here not only whether a money-mandating interpretation of the statute is plausible, but also the ultimate question of whether the statute is or is not money-mandating. II. The majority holds repeatedly that' “§ 3102(b) is reasonably amenable to an interpretation that it is money-mandating.” Maj. Op. at 886, 887. It does not, however, engage with what the words “reasonably amenable” mean in light of Fisher. This oversight leads the majority to the wrong result. A. The majority starts, as it must, with the plain language of § 3102(b). Id. at 882. In relevant part, § 3102(b) provides that every employer required, to deduct -FICA taxes “shall be liable for the payment of such tax, .and shall be indemnified against the claims and demands of any person for the amount of any such payment made by such employer.” The majority finds, understandably, that the plain meaning of the word “indemnified” encompasses monetary compensation. Maj. Op. at 882-84. But the majority errs in its response to the government’s argument that, at. the time the statutory language was drafted, the word “indemnified” primarily referred to immunity from liability. The majority contends that “the fair interpretation standard used to determine whether a statute is money-mandating does not require courts to evaluate whether the ‘first’ or ‘primary’ meaning of the statute mandates compensation.” Id. at 884-85. “In'stead,” the majority holds, the standard ’ “requires courts to evaluate whether the statute is ‘reasonably amenable to the reading that it mandates a right of recovery in damages.’ ” Id. (alteration in original) (quoting White. Mountain, 537 U.S. at 473, 123 S.Ct. 1126). The majority then rejects the government’s contention that this reading of the 'Statute would have absurd results, finding it sufficient that “the plain language of § 3102(b) is reasonably amenable to an interpretation that it mandates reimbursement.” Id. at 885. The majority asks whether the word “indemnified” can mean a right to reimbursement. White Mountain and Fisher, however, require us to decide whether “indemnified” does confer a right to reimbursement, or at least can fairly be interpreted that way. In effect, the majority determines whether a money-mandating interpretation of § 3102(b) is permissible under Chevron, not whether it is fair under White Mountain and Fisher. In the context of the statutory scheme, I would find that it is not.[2] When the similarly phrased predecessor to § 3102(b) was enacted,[3], dictionaries defined the terns “indemnify” and “indemnity” to mean immunity from liability. The 1933 edition of the Oxford English Dictionary defined “indemnify” as, among other things, “[t]o preserve, protect, or keep free from, secure against (any hurt, harm, or loss); to secure against legal responsibility for past or future actions or events.” The Oxford English Dictionary 194-95 (1933). The 1917 and 1942 editions of Webster’s New International Dictionary similarly defined “indemnify” to mean “[t]o save harmless; to secure against loss or damage,” and they defined “indemnity” to include “immunity from penalty, or the punishment of past offenses.” Webster’s New International Dictionary of the English Language 1093 (W.T. Harris ed., 1917); Webster’s New International Dictionary of the English Language 1262 (William Allan Neilson ed., 2d ed. 1942). And, in the 1933 edition of Black’s Law Dictionary, one definition of “indemnity” was “[a] legislative act, assuring a general dispensation from punishment or exemption from prosecution.” Indemnity, Black’s Law Dictionary (3d ed. 1933).[4] The majority is correct that the “plain meaning of ‘indemnify included monetary compensation.” Maj. Op. at 883 (emphasis added). As the majority notes, several contemporaneous dictionaries also defined the word to refer to a right to reimbursement. Id. at 883-84. At the very least, however, the term is ambiguous. And, because we must determine whether the statute is money-mandating, we are obligated to resolve the ambiguity, even if, in doing so, we are to construe the statute liberally. “[T]he words of a statute must be read in their context and with a view to their place in the overall statutory scheme.” Davis v. Mich. Dep’t of Treasury, 489 U.S. 803, 809, 109 S.Ct. 1500, 103 L.Ed.2d 891 (1989). The first clause of § 3102 requires employers to collect and pay FICA taxes to the IRS. Taxpayers who seek a credit or refund for any overpayment of FICA taxes must file a claim with the IRS within a specified time period. 26 U.S.C. § 6511. Section 7422(a) then precludes any court from considering an employee’s claim for the recovery of any FICA taxes paid until the employee files a claim with the IRS. Such a suit “may be maintained only against the United States.” Id. § 7422(f)(1). The “expansive reach” of § 7422 ensures “that taxpayers seeking refunds of unlawfully assessed taxes must comply with the Code’s refund scheme before bringing suit, including the requirement to file a timely administrative claim.” United States v. Clintwood Elkhorn Min. Co., 553 U.S. 1, 7-8, 128 S.Ct. 1511, 170 L.Ed.2d 392 (2008). In sum, any taxpayer seeking a refund of taxes collected erroneously or unlawfully must comply first with the administrative claim process. Id. at 4, 128 S.Ct. 1511. Only then may the taxpayer file suit against the government—and only the government—either in federal district court or in the Court of Federal Claims. Id. Given this framework, it would make no sense for § 3102(b) to give the employer a right of reimbursement against “claims or demands ... for the amount of’ FICA taxes paid. The statutory scheme directs taxpayers’ refund claims first towards the administrative process and then to suits against the government. No part of this process involves the employer. It is implausible that Congress created a reimbursement provision applicable solely to a procedural avenue that it explicitly precluded. And it hardly seems “fair” to interpret the statutory scheme as one which permits the employer, at its whim, to pay tax refunds to its own employees and then turn around and demand reimbursement from the government.[5] B. The majority also points to other provisions of the tax code that eschew the “shall be indemnified” language of § 3102(b) in favor of the clearer statement that the “employer ... shall not be liable” for the amount of taxes deducted. 26 U.S.C. §§ 3202(b), 3403. The former should be interpreted differently from the latter, the majority posits, in light of the canon of construction that Congress intends different phrases in the same law to have different meanings. Maj. Op. at 886-87 (citing Sebelius v. Cloer, 669 U.S. 369, 378, 133 S.Ct. 1886, 186 L.Ed.2d 1003 (2013)). That principle applies with substantially less force to legislative activity like this, where the statutes in question were enacted piecemeal over the course of decades. Indeed, as the majority observes, the predecessor statutes to §§ 3202(b) and 3403 originally provided that the employer was “hereby indemnified” against demands for taxes paid. Carriers and Employees Tax Act of 1935, Pub. L. No. 74-400, § 3(a), 49 Stat. 974, 975 (predecessor to § 3202(b)); Revenue Act of 1916, Pub. L. No. 64-271, § 9(b), 39 Stat. 756, 764 (predecessor to § 3403). These statutes were later amended to say that the employer “shall not be liable” for such demands. Internal Revenue Code of 1939, Pub. L. No. 76-1, § 1501(b), 53 Stat. 1, 179 (1939) (predecessor to § 3202(b)); Revenue Act of 1942, Pub. L. No. 77-753, § 467(b), 56 Stat. 798, 891 (predecessor to § 3403).[6] Section 3102(b), on the other hand, retained the word “indemnified,” and the majority finds this fact “instructive.” Maj. Op. at 886 n.14. But the legislative history accompanying the amendments to §§ 3202(b) and 3403 did not give any reason for the change in language. Congress presumably would not transform a reimbursement provision into an immunity provision sub silentio. These statutes therefore do not require us to read § 3102(b) differently. To ■ the contrary, the legislative history suggests we should read all three statutes to mean the same thing—that is, as immunity provisions. The majority also finds that “§ 7422 demonstrates that Congress knew how to craft an immunity provision when it so desired.” Maj. Op. at 887. But § 7422, unlike §§ 3202(b) and 3403, is not primarily an immunity provision for employers. Section 7422(f) provides that a tax refund suit “may be maintained only against the United States and not against any officer or employee of the United States (or former officer or employee) or his personal representative.” Although the first clause of § 7422(f) implicitly confers immunity on employers by requiring claimants to bring suit against the United States instead, the' remainder of the provision makes clear that its principal goal is to immunize officers or employees of the United States from suit. And, to the extent § 7422 renders § 3102(b) redundant if the latter is read as an immunity provision, the same is true with regard to §§ 3202(b) and 3403. Faced with the choice to read a statute as either redundant or nonsensical, we have no choice but to take the former route. Cf. Chickasaw Nation v. United States, 534 U.S. 84, 94-95, 122 S.Ct. 528, 151 L.Ed.2d 474 (2001) (“The canon requiring a court to give effect to each word ‘if possible’ is sometimes offset by the canon that permits a court to reject words ‘as surplusage’ if ‘inadvertently inserted or if repugnant to the rest of the statute.’ ” (quoting Karl N. Llewellyn, The Common Law Tradition 525 (I960))). C. The majority finally notes that the legislative history of § 3102(b) indicates that the provision indemnifies employers “against any claims and demands with respect to that part of the wages of the employee which he withheld, up to the correct amount withheld and paid to the United States.” H.R. Rep. 'No. 74-615, at 30 (1935) (emphasis added). The emphasized language, the majority contends, “indicates that Congress understood ‘indemnification’ to contemplate the payment of money.” Maj. Op. at 887. The reference to the “amount” paid does not imply that § 3102(b) contemplates reimbursement. As enacted, § 3102(b) provides that the employer “shall be indemnified .... for the’ amount, of’ taxes paid. Sections 3202(b) and 3403, which are undoubtedly immunity provisions, similarly specify that the employer “shall not be liable ... for the amount of’ taxes paid. Section 3102(b) should be read the same way. III. For the reasons above, I would affirm the thoughtful decision of the Court of Federal Claims. I respectfully dissent. ,. It is unclear-how the liberal- construction, mandate relating to remedial statutes applies in these circumstances. See Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 364-66 (2012) (discussing, and criticizing, the rule that remedial statutes should be liberally construed). . The majority indicates in a footnote that it also "believe[s]” that the money-mandating interpretation of § 3102(b) is "the only reasonable” one. Op. at 882 n.6. Obviously, I disagree with that proposition. I note, moreover, that the majority's analysis focuses solely on whether its interpretation is reasonable and not, as Fisher requires, on whether the money-mandating interpretation is better than the alternative. . As the majority notes, § 3102(b) "originally was enacted in 1935 as § 802(a) of the Social Security Act,” and "neither party contends that [any subsequent] amendments to the language affect our analysis.” Maj. Op. at 883 n.8 (citing Social Security Act, ch. 531, tit. VIII, § 802(a), 49 Stat. 620, 636 (1935)). . Like the majority, I do not find the ordering of the definitions in these dictionaries particularly significant. . The majority appears to recognize that its interpretation of § 3102(b) would lead to unreasonable results, but it holds nevertheless that § 3102(b) is money-mandating because "the plain language of § 3102(b) is reasonably amenable to an interpretation that it mandates reimbursement.” Maj. Op. at 885. . In fact, when Congress amended the predecessor to § 3202(b) in 1939 to include the "shall not be liable” language, it also inserted the heading "[¡Indemnification of employer.” § 1501(b), 53 Stat. at 179. Although tire majority is correct that the heading itself has no legal effect, Maj. Op. at 886'n. 13, it does shed light on how Congress may have understood the word "indemnify.”